UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

ERIC BENNETT,
          Appellant,

      v.

DEPARTMENT OF
  TRANSPORTATION,
          Agency.

DOCKET NUMBERS
NY-0752-14-0073-X-1
NY-0752-14-0073-C-2

DATE: June 12, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Jonathan Bell, Esquire, and Susan Tylar, Esquire, Garden City, New York,
    for the appellant.

Daniel P. Kohlmeyer, Esquire, Jamaica, New York, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## ORDER

¶1        In an October 26, 2022 Order, the Board affirmed, except as modified to find an additional basis of agency noncompliance, the compliance initial decision, which granted in part the appellant's petition for enforcement and found the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

agency in partial noncompliance with the final decision in the underlying appeal reversing the appellant's removal and ordering him reinstated with back pay and benefits. *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-C-2, Order (Oct. 26, 2022); *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-C-2, Compliance Petition for Review (CPFR) File, Tab 6; *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-C-2, Compliance File (C-2 CF), Tab 11, Compliance Initial Decision (CID). Specifically, the compliance initial decision found the agency in noncompliance to the extent it had failed to pay the appellant $6,000 in bonus pay as part of his back pay award. CID at 4-5. The Board modified the compliance initial decision to also find the agency in noncompliance to the extent it failed to provide sufficient and clear information regarding its calculation of the appellant's overtime back pay. Order, ¶¶ 1, 11-13. The Board ordered the agency to submit evidence of compliance within 60 days demonstrating that it properly calculated the appellant's overtime hours and that the back pay award reflected that calculation. *Id.*, ¶ 14. For the reasons discussed below, we find that the agency has established compliance with its obligation to pay the appellant $6,000 in bonus back pay but remains in noncompliance with its obligation to demonstrate that it has properly calculated and paid the appellant the appropriate amount of overtime back pay with interest.

## BACKGROUND

¶2    The appellant, an Air Traffic Control Specialist, sustained an on-the-job injury on March 25, 2011, and the Office of Workers' Compensation Programs (OWCP) accepted his claim for traumatic injury. *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-I-2, Refiled Appeal File, Tab 21, Initial Decision (ID) at 2-3. Effective November 9, 2013, the agency removed the appellant from Federal service due to his continuing unavailability for duty, noting that he had not reported for regular, full-time duty since his

March 25, 2011 injury. ID at 1, 12-13. The appellant appealed his removal to the Board, and in a July 29, 2016 initial decision, the administrative judge reversed the removal and ordered the agency to reinstate him effective November 9, 2013, and provide him appropriate back pay with interest and restored benefits. ID at 27, 38. Neither party petitioned for review of the initial decision, which became final on September 2, 2016. ID at 40.

¶3        On January 23, 2017, the appellant filed a petition for enforcement arguing that the agency had failed to properly calculate and pay his back pay award, failed to restore certain leave, and failed to give him a chance to "buy back" his OWCP leave. *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-C-1, Compliance File (C-1 CF), Tab 1. The agency argued that the appellant was not entitled to back pay for the period he received OWCP benefits—November 9, 2013, through February 17, 2015—and provided affidavits reflecting, in relevant part, that it would pay the appellant for approximately 232 hours of overtime for 2015 and 153.5 hours of overtime for 2016 based on the overtime hours he actually worked in the year prior to his injury. C-1 CF, Tab 7 at 5, 10-11, 13

¶4        In a March 10, 2017 interim order, the administrative judge held that, contrary to the agency's contention, the appellant was entitled to the back pay and benefits for the period he was receiving OWCP benefits, less deductions that ordinarily would have been taken, including an offset for any OWCP wage replacement benefits he actually received, since the agency had failed to submit concrete and positive evidence establishing that the appellant was not ready, willing, and able to perform the duties of his position during that time. C-1 CF, Tab 12 at 1-2. The administrative judge explicitly stated that the appellant's back pay for this period "should include all additional pay, such as overtime, Sunday pay, night differential and holiday pay that he would have received had he worked during this time period." *Id.* at 2 (citing *Powe v. U.S. Postal Service*, 108 M.S.P.R. 130 (2008)). Accordingly, the administrative judge ordered the

agency to pay the appellant the appropriate amount of back pay for the time period from November 9, 2013, through February 17, 2015, and dismissed the appeal without prejudice for a period of 60 days to give the agency time to comply with the interim order. *Id.* at 2; C-1 CF, Tab 13.

¶5    Upon the automatic refiling of the petition for enforcement, the appellant narrowed the scope of his enforcement challenges to the following allegations of noncompliance:  (1) the agency failed to correctly calculate his overtime back pay; (2) the agency failed to him pay $9,000 in bonus awards for 2015; and (3) the agency failed to give him the opportunity to "buy back" his OWCP leave. C-2 CF, Tab 6 at 6-8.  In an August 1, 2017 compliance initial decision, the administrative judge granted the appellant's petition in part and found the agency in noncompliance to the extent it failed to pay him $6,000 in bonus payments he would have received but for the improper removal.  CID at 4-6.  The administrative judge denied the appellant's petition for enforcement to the extent he claimed that the agency failed to correctly calculate the overtime hours in his back pay award, finding that the agency's decision to pay the appellant overtime based on his pre-removal overtime hours was not unreasonable. CID at 3-4.  The administrative judge also denied the appellant's petition for enforcement to the extent he argued that the agency failed to afford him an opportunity to buy back leave, finding that the appellant failed to establish that he was entitled to do so. CID at 5-6.

¶6    On September 20, 2017, after requesting and receiving an extension of time to file, the appellant petitioned for review of the compliance initial decision, arguing that the administrative judge erred in finding that the agency correctly calculated the overtime hours in his back pay award.[2]  CPFR, Tab 1.  In the October 26, 2022 Order, the Board found that the agency's use of the appellant's

---

[2] The appellant did not challenge in his compliance petition for review the administrative judge's findings that he was entitled to $6,000 in bonus pay as part of his back pay award or that he was not entitled to buy back any leave.  CPFR File, Tab 1.

historical overtime hours to calculate his overtime back pay award was reasonable but that the agency failed to present clear and understandable evidence that its overtime back pay calculations were accurate. Order, ¶¶ 8-13. Accordingly, the Board affirmed the compliance initial decision except as modified to find that the agency's failure to present clear and understandable information regarding its overtime back pay calculation constituted an additional basis of agency noncompliance. *Id.*, ¶¶ 1, 13. The Board ordered the agency to submit evidence and a narrative statement of compliance within 60 days, including evidence demonstrating that it properly calculated the appellant's pre-removal overtime hours and that the back pay awarded to the appellant reflected that calculation. *Id.*, ¶ 14.

¶7        On December 23, 2022, the agency submitted a narrative statement and a sworn declaration from a Payroll Program Specialist explaining that the "confusion" regarding the overtime hours in the back pay award occurred as a result of the agency entering hours into timecards as decimals in Excel (base 100) and the payroll services interpreting those entries as clock hours and minutes (base 60), i.e., the agency input 1.26 to signify 1 hour and 16 minutes, but payroll services interpreted this figure as 126 minutes (or 2 hours 6 minutes). CRF, Tab 3 at 4-5, 7-8. The agency stated, however, that this issue was identified and corrected in 2017, so the overtime calculation and back pay calculations made at the time were correct, and provided a copy of an email from the Supervisory Human Resources Specialist stating that the appellant's "payment is correct." *Id.* at 5, 9.

¶8        In response, the appellant argued that the agency's December 23, 2022 compliance submission failed to demonstrate that it properly calculated and paid him the appropriate amount of overtime hours for the full back pay period from November 9, 2013, through November 6, 2016. CRF, Tab 4 at 4-6. The appellant

also argued that he was entitled to the outstanding overtime back pay plus interest and attorney's fees in connection with his petition for enforcement.[3]  *Id.* at 6-7.

## ANALYSIS

¶9    When, as here, the Board finds a personnel action unwarranted, the aim is to place the appellant, as nearly as possible, in the situation he would have been in had the wrongful personnel action not occurred.  *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011); *King v. Department of the Navy*, 100 M.S.P.R. 116, ¶ 12 (2005), *aff'd per curiam*, 167 F. App'x 191 (Fed. Cir. 2006).  The agency bears the burden to prove compliance with the Board's order by a preponderance of the evidence.[4]  *Vaughan*, 116 M.S.P.R. 319, ¶ 5; 5 C.F.R. § 1201.183(d).  An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan*, 116 M.S.P.R. 319, ¶ 5.  The appellant may rebut the agency's evidence of compliance by making specific, nonconclusory, and supported assertions of continued noncompliance.  *Id*.

$6,000 Bonus Award

¶10    As described above, the administrative judge found that the agency was not in compliance with the Board's final order in the underlying appeal because it had failed to pay the appellant $6,000 in bonus pay as part of his back pay award.  CID at 4-5.  The agency's submissions show that it has now made this payment.  CRF, Tab 2.  In particular, as set forth above, the agency stated and provided

---

[3] The appellant's request for attorney fees in connection with these compliance proceedings is premature because the Board has not yet issued a final decision on compliance.  *See Galatis v. U.S. Postal Service*, 109 M.S.P.R. 651, ¶ 14 (2008); 5 C.F.R. § 1201.203(d) (requiring a motion for attorney fees to be filed as soon as possible after a final decision of the Board but no later than 60 days after the date on which a decision becomes final).

[4] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

evidence reflecting that the agency paid the appellant a $6,000 lump sum on August 15, 2017. CRF, Tab 2. As the appellant has not responded to the agency's assertions and evidence of compliance, the Board assumes that he is satisfied. *See Baumgartner v. Department of Housing and Urban Development*, 111 M.S.P.R. 86, ¶ 9 (2009). Accordingly, we find that the agency has complied with its outstanding obligation to pay the appellant the $6,000 in bonus pay he would have received during the back pay period had the removal not occurred.

Overtime Pay

¶11    Overtime back pay may be computed based on either the appellant's own overtime history or the average overtime hours worked by similarly situated employees during the relevant time period. *Rittgers v. Department of Army*, 123 M.S.P.R. 31, ¶ 13 (2015). Although the appellant is not entitled to receive a windfall, he is entitled to be restored to the status quo ante, and the agency must use the method of computation most likely to achieve this goal. *Id.* The Board will not nullify the method used by the agency to calculate overtime back pay in the absence of a showing that the method was unreasonable or unworkable. *Id.*

¶12    Here, the agency stated that it calculated the appellant's overtime back pay award based on the hours of overtime he worked during the year prior to his March 25, 2011 injury and determined on that basis that he was entitled to approximately 232 hours of overtime per year. C-1 CF, Tab 7 at 5-6, C-2 CF, Tab 7 at 5. The only evidence the agency provided regarding the number of hours of overtime back pay the agency paid the appellant is a February 7, 2017 affidavit completed by the Payroll Program Specialist attesting that the appellant received the following overtime back pay:

| Period | Overtime hours | Overtime Pay |
|---|---|---|
| 1/11/2015 – 6/13/2015 | 76 hours 10 min. | $9,357.33 |
| 6/14/2015 – 1/9/2016 | 155 hours 40 min. | $19,594.97 |
| 1/10/2016 – 6/11/2016 | 93 hours 10 min. | $11,837.10 |
| 6/12/2016 – 10/15/2016 | 60 hours 20 min. | $7,783.85 |

C-1 CF, Tab 7 at 10-11. Thus, the agency's evidence reflects that the appellant received back pay for approximately 232 hours of overtime in 2015 and approximately 153.5 hours of overtime for 2016, for a total of 385 hours and 20 minutes of overtime for the period from January 11, 2015, through October 15, 2016.

¶13 As noted above, both the administrative judge and the Board found that the agency's decision to calculate the appellant's overtime back pay using his overtime history was not unreasonable. Order, ¶¶ 8-10; CID at 4. However, the Board found that the agency had failed to present clear and understandable evidence showing that its overtime back pay calculations were accurate. Order, ¶¶ 11-13. Specifically, the Board found that the agency failed to provide any evidence confirming that the appellant previously worked 232 hours of overtime per year and noted that the records submitted by the appellant show that he worked 215 hours of overtime in 2015, rather than 232. *Id.*, ¶¶ 12-13. The Board additionally found that the Management Support Specialist's statements that she used the overtime hours the appellant worked in each pay period the year prior to his injury and applied these hours to both 2015 and 2016 conflicted with the Payroll Program Specialist's affidavit, which stated that the appellant was entitled to only 153 hours of overtime for 2016 and to different amounts of overtime for the January-to-June period of each year. *Id.* at ¶ 13. Furthermore, the Board noted that, at the time the agency submitted this evidence, the agency believed that it was not required to pay the appellant back pay for the period he was

receiving OWCP benefits (November 9, 2013, through February 17, 2015) and therefore applied the appellant's historical overtime hours only to 2015 and 2016. *Id.*, ¶ 13 n.2. However, as the Board observed, the administrative judge subsequently ruled that the agency was required to pay the appellant back pay, including overtime pay, for the period he was receiving OWCP benefits, minus an offset for any OWCP wage replacement benefits he actually received. *Id.*

¶14 In its statement of compliance responding to the Board's finding of noncompliance in connection with its overtime calculations, the agency stated that the "confusion" with its back pay calculations arose as a result of converting unspecified timecard entries from decimal hours to clock hours and minutes but that the appellant nonetheless received the correct amount of back pay. CRF, Tab 3 at 5, 9. This submission fails to address the deficiencies identified in the Board's Order and does not satisfy the agency's obligation to demonstrate compliance by preponderant evidence.

¶15 First, the agency has still not provided clear and understandable evidence supporting its determination that the appellant was entitled to 232 hours of overtime per year of the back pay period based on the overtime hours he actually worked prior to his injury. The agency has previously represented that it determined the appellant's overtime back pay award based on the hours of overtime he worked in the 1 year before his March 25, 2011 injury. C-1 CF, Tab 7 at 5, 13. The Board previously construed this statement to mean the overtime hours worked in 2010. Order, ¶¶ 8-10, 12, 14. It appears, however, that the agency may have been referring to the 12-month period immediately preceding his removal, i.e., March 25, 2010, through March 24, 2011, rather than the year 2010. Regardless of which of these 12-month periods the agency used to calculate the appellant's overtime back pay entitlement based on his overtime history, it must submit evidence supporting its determination that the appellant actually worked 232 hours of overtime during that period.

¶16 Second, the agency has not stated or provided any evidence showing that it has properly calculated and paid the appellant the appropriate amount of overtime back pay for the entire back pay period, including November 9, 2013, through February 17, 2015, as expressly required by the administrative judge's interim order, or October 16, 2016, through the date of his reinstatement.[5] The unsworn and unsupported email from the Supervisory Human Resources Specialist stating that the appellant's "payment is correct," CRF Tab 3 at 9, does not establish that the appellant has received the correct amount of overtime back pay, *see Adamsen v. Department of Agriculture*, [116 M.S.P.R. 331](), ¶ 17 (2011) (finding an unsworn unsupported statement not to be probative of the matter asserted). The agency must provide evidence showing that it has satisfied its obligation to calculate and pay the appellant the overtime back pay to which he is entitled for the entire back pay period.

¶17 Third, the agency has failed to provide clear and understandable evidence accounting for the apparent conflict between the Management Support Specialist's affidavit stating that the appellant's historical overtime data was applied to both 2015 and 2016 and the Payroll Program Specialist's affidavit stating that the appellant was entitled to only 153 hours of overtime for 2016 and to 17 hours of overtime less for the January-to-June period in 2015 than the same time period in 2016. Although the agency's December 23, 2022 compliance submission contends that the "confusion" in its prior back pay calculations resulted from a conversion error, the agency does not explicitly state which numbers were affected by the error or explain how the error actually affected any particular number. CRF, Tab 3. Thus, it is unclear if the purported conversion error affected the agency's calculations regarding the appellant's overtime back

---

[5] The appellant states that he returned to work on November 6, 2016, although there does not appear to be any evidence in the record confirming this date. CRF, Tab 4 at 5. If the agency does not provide evidence confirming the end date of the back pay period, the Board will assume the appellant's statement is correct.

pay for 2015 and 2016 and, even if it did, the agency's submission does not provide sufficient information for the Board to find that the overtime hours paid to the appellant for these years were correct. Moreover, we note that the 17-hour difference between the 76 hours 10 minutes of overtime paid to the appellant for the January-to-June period in 2015 and the 93 hours 10 minutes of overtime paid to him for the same period in 2016 appears to be accounted for by, at least in part, the agency's apparent failure to pay the appellant overtime back pay for the period he was receiving OWCP benefits, rather than solely due to the purported conversion error. If the agency maintains that its prior calculations regarding the appellant's overtime entitlement in 2015 and 2016 are correct, it must provide a clear and understandable explanation, supported by evidence, addressing how it derived those numbers and why there are differences between the overtime hours for the same periods in 2015 and 2016.

**ORDER**

¶18      Accordingly, we ORDER the agency to submit, within 21 calendar days of the date of this order, satisfactory evidence of compliance with the Board's Order. Specifically, the agency must submit evidence and a detailed narrative establishing the following by preponderant evidence:

    (1)    that the agency has properly calculated based on the appellant's overtime history the number of overtime hours he is entitled to per year of the back pay period, including evidence establishing that the appellant in fact worked 232 hours of overtime in the 12-month period preceding his injury or in 2010;

    (2)    that the agency has properly calculated the appellant's entitlement to overtime back pay for the entire back pay period, including the period when he was receiving OWCP benefits (November 9, 2013, through February 17, 2015) and from October 16, 2016, through the date of his return to work; and

(3)　if the agency determines that the appellant is entitled to additional overtime back pay, that it has paid him the appropriate overtime back pay, minus appropriate deductions and offsets, with interest, which shall accrue through a date not more than 30 days before the date on which the payment is made, *see* 5 U.S.C. § 5596(b)(2)(B)(i).

¶19　　Furthermore, we ORDER the agency to submit, within 21 calendar days of this order, the name, title, grade, address, and email address of the agency official or officials charged with complying with the Board's order and provide evidence showing that it has informed such official or officials in writing of the potential sanction for noncompliance as set forth in 5 U.S.C. § 1204(a)(2) and (e)(2)(A), even if the agency asserts that it has fully complied with the Board's order.[6] 5 C.F.R. § 1201.183(a)(2).　If the agency fails to identify the agency official or officials charged with complying with the Board's Order, the Board will presume that the highest ranking appropriate agency official who is not appointed by the President by and with the consent of the Senate is charged with compliance.　*Id.*

¶20　　The appellant may respond to the agency's response to this Order within 21 calendar days of the date of service of the agency's submission.　If the appellant does not respond to the agency's submission regarding compliance

---

[6] We acknowledge that, in response to the administrative judge's acknowledgment order, the agency identified five "responsible agency officials":　a Lead Human Resources Specialist, a Senior Technical Specialist, the Payroll Program Specialist, a Supervisor of Benefits within the Interior Business Center, and the Management Support Specialist.　C-1 CF, Tab 7 at 4-5.　However, it is unclear which of these individuals, if any, is charged with complying with the Board's Order to properly calculate and pay the appellant's overtime back pay with interest.　*See* 5 U.S.C. 1204(a)(2); 5 C.F.R. § 1201.183(a)(2).　Pursuant to 5 U.S.C. 1204(e)(2)(A), the Board may order that any employee charged with complying with its order, other than an employee appointed by the President by and with the advice and consent of the Senate, shall not be entitled to receive payment for service as an employee during any period that the order has not been complied with.　Accordingly, the agency must identify the responsible agency official or officials charged with—and with the authority to—comply with the Board's Order to calculate and pay the appellant the appropriate amount of overtime back pay with interest.

within 21 calendar days, the Board may assume that he is satisfied and dismiss the petition for enforcement.

¶21     This Order does not constitute a final order and is therefore not subject to judicial review under 5 U.S.C. § 7703(a)(1).  Upon the Board's final resolution of the remaining issues in this petition for enforcement, a final order subject to judicial review will be issued.


FOR THE BOARD:                           /s/ for
                                    _____
                                    Jennifer Everling
                                    Acting Clerk of the Board

Washington, D.C.